## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **HAROLD SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **5:13-cv-00314-AKK** |
| **AI SIGNAL RESEARCH INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Harold Smith ("Smith") brings this action against his former employer, AI

Signal Research Inc. ("ASRI"), for alleged discriminatory discharge under Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.,

Section 1981 of the Civil Rights Act of 1866 ("§ 1981"), and the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.  Doc. 1.

ASRI contends that the complaint is due to be dismissed under Fed. R. Civ.

P.12(b)(6) for failure to state a claim upon which relief may be granted.  Doc. 6.

The motion is fully briefed and ripe for review.  Docs. 6, 14, 16.  For the reasons

stated more fully below, the motion is **DENIED**.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a

short and plain statement of the claim showing that the pleader is entitled to

relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*,556 U.S. at 678 (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. PROCEDURAL AND FACTUAL BACKGROUND[1]

ASRI hired Smith, an African American male over age 40, in June 2008 as a Computer Support Technician and later moved him to a Technical Writer II position within the climatic test branch at Redstone Arsenal.  Doc. 18 at ¶¶ 5, 17. A month later, five other employees, including Smith's supervisor Steven W. Johnson, came to the work area wearing "white protective clothing" that included "pointed hats that resembled KKK garb."  *Id.* at ¶ 6.  Smith inquired about whether the attire was in response to an "anthrax attack," but one of the men responded that "this was not about anthrax."  *Id.*  Another employee apparently complained about the incident to Johnson's immediate supervisor, Raymond Bennett, who questioned Smith about the incident and later moved Smith to another building for two weeks.  *Id.* at ¶¶ 7-8.

When Smith returned to his original work station, he discovered that Johnson had assigned his station to another employee.  *Id.* at ¶ 8.  Smith's

---

[1] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (*quoting GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  In other words, the "facts" here are taken directly from the complaint.

complaint prompted Bennett to require Johnson to provide Smith "a suitable work station." *Id*.  Some time later, a Caucasian intern "walked over to [Smith's] work station while [Smith] was eating, flatulated and then walked away."  *Id*. at ¶ 9. Allegedly, Johnson failed to take any action in response to Smith's complaint about this incident.  *Id*.[2]  Presumably, Smith is contending this incident is part of some ongoing alleged harassment.

The next incident Smith raises is ASRI's decision to lay him off in November 2011.  Smith contends that discriminatory and retaliatory animus factored into the decision because ASRI retained two employees it hired after Smith.  ASRI hired the first employee, "Ms. Whaley," an African American female under the age of 40, as a Technical Writer in August 2009.  *Id*. at ¶¶ 14, 17.  Smith helped train Ms. Whaley.  *Id*. at 14.  ASRI hired the second employee, "Ms. North," a Caucasian female under the age of 40, in August 2011 as a Technical Writer I and trained her to perform the position since she had no prior experience. *Id*. at ¶ 15, 17.  Three months after hiring North, ASRI discharged Smith "due to a lay off" caused by reduced funding.  *Id*. at ¶ 16.  However, ASRI retained Whaley

---

[2] It appears that Smith became a Technical Writer II some time after this incident because Smith alleges that when he transitioned to this position, Bennett became his immediate supervisor.  Doc. 1 at ¶ 10.  Smith further alleges that he received two "exceeded expectations" performance reviews from Bennett before Johnson replaced Bennett as Smith's supervisor in December 2010.  *Id*. at ¶¶ 11-12.  Therefore, it appears that Smith's initial supervisor was Johnson, then Bennett, and then it changed back to Johnson.

4

and North and both continued to perform the duties Smith previously performed even though they were purportedly less qualified than Smith. *Id.* at ¶ 17, 19. To support his contention that Johnson recommended him for the lay off based on discriminatory animus, Smith alleges, in part, that Johnson once commented that a younger female coworker Smith was walking with during the lunch hour "must be really hard up because [Smith] was 'older than dirt.'" *Id.* at ¶ 13, 20.

### III. ANALYSIS

Smith asserts claims for age discrimination under the ADEA (Count 1), retaliatory discharge under § 1981 and Title VII (Counts 2 and 4), and racial discrimination under § 1981 and Title VII (Counts 3 and 5). *See* doc. 1. ASRI contends that Smith failed to state a viable claim under any of the applicable laws. Doc. 6. The court discusses each claim below.

**A.     Count 1: Discriminatory Discharge (ADEA)**

To properly plead a claim of discriminatory discharge under the ADEA, the plaintiff must allege "(1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d

5

1428, 1432 (11th Cir. 1998).  ASRI contends that Smith failed to properly allege the third element by failing to allege that Whaley and North were "similarly situated in all relevant respects" and treated more favorably than Smith, or "that Whaley [and] Smith were working on the same government contract(s) that funded [Smith's] position."  Doc. 6 at 14-15.  The court disagrees.

To survive a motion to dismiss, Smith does not need to plead his claim with "detailed factual allegations."  *Iqbal*, 556 U.S. at 678.  Rather, he must simply provide enough facts to raise his claim above the speculative level and allow the court to draw a "reasonable inference" that ASRI is liable for discriminatory discharge.  *Id*.  Smith made this showing by pleading that ASRI hired Whaley and North as technical writers, that both were under age 40 and had less experience than him, and that Whaley and North continued to perform duties he could have performed. Doc. 1 at ¶¶ 14-15, 17, 19.  Based on these factual allegations, the court can infer that Smith contends he is similarly situated to Whaley and North, that ASRI treated Whaley and North more favorably by retaining them even though they purportedly had less experience than Smith, and, in light of Smith's allegation that Whaley and North performed duties he could have performed, that ASRI replaced Smith with these two younger employees.  Accordingly, Smith properly pled a claim for discriminatory discharge under the ADEA.

ASRI contends further that "Smith himself alleges that ASRI articulated a legitimate nondiscriminatory reason for terminating his employment[,]" but failed to allege that this reason was pretextual.  Doc. 6 at 16.  Although Smith notes ASRI's purported reason for his discharge, i.e. layoffs caused by funding cuts, he also alleges sufficient facts to create an inference of pretext.  After all, even if ASRI eliminated Smith's original position, Smith can still prevail by showing that he "was qualified for another available job with that employer," or, if his job was consolidated or reassigned to other employees, "that []*he was qualified for [his] current position* or to assume another position at the time of discharge."  *Henry v. Jefferson Cnty.  Personnel Bd.*, 519 F. Supp. 2d 1171, 1186-87 (N.D. Ala. 2007)(quoting *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1083 (11th Cir. 1990), *and Williams v. Vitro Srvs. Corp.*, 144 F.3d 1438, 1442 (11th Cir. 1998) (emphasis in original)).  In his complaint, Smith alleges not only that he was qualified for his current position, but that he was also qualified to perform the positions held by Whaley and North.  Doc. 1 at ¶ 19.  In other words, Smith properly pled pretext to survive a motion to dismiss his ADEA claim.

## B.    Counts 3 and 5: Discriminatory Discharge (Title VII and § 1981)

As it relates to Smith's race-based discriminatory discharge claims, the court first notes that Title VII and § 1981 "have the same requirements of proof

and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  As such, to properly plead a claim for discriminatory discharge, Smith must allege "that he (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) his employer treated similarly situated employees outside his classification more favorably." *Ashmore v. Secretary, Dept. of Transp.*, No.12-10515, 2013 WL 28433, at *3 (11th Cir. Jan. 3, 2013) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.  1997)).  ASRI contends that Smith failed to properly plead that ASRI treated a similarly situated comparator more favorably. Doc. 6 at 14-16.  The court disagrees since Smith maintains that ASRI hired North, a Caucasian female with less experience, to also work as a technical writer and that, despite his superior qualifications, ASRI discharged him three months after it hired North and opted to retain North when ASRI suffered funding cuts. Doc. 18 at ¶¶ 15, 17, 19, 34.  These allegations are sufficient at this juncture for Smith to establish that he can satisfy the prima facie case and survive a motion to dismiss his race-based discriminatory discharge claims.

## C.   Counts 2 and 4: Retaliatory Discharge (Title VII and § 1981)

ASRI raises several contentions in support of its motion to dismiss the retaliatory discharge claims.  ASRI contends first that Smith failed to properly

allege a "protected activity."[3]  Doc. 6 at 10-13.  This contention ignores that Smith

alleges in his complaint that he engaged in opposition based protected activity by

(1) answering questions from Bennett about the white protective clothing incident

after the Bennett "learned about the incident[,]" (2) complaining to Johnson about

a flatulation prank, and (3) complaining to Bennett about Johnson reassigning

Smith's work station.[4]  Doc. 18 at ¶¶ 7-9, 29, 38.  The court agrees with ASRI that

Smith's complaint about the flatulation incident does not constitute conduct

opposing employment discrimination within the meaning of Title VII or § 1981,

because Smith failed to allege any race-based motivation for the incident.

However, the white protective clothing incident, which Smith refers to as the

---

[3] To properly plead a claim of retaliation under Title VII or § 1981, a plaintiff must allege that "he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events."  *Butler v. Alabama Dept. of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008); *see also Ash v. Tyson Foods, Inc.*, 662 F.3d 883, 903 (11th Cir. 2011) (stating that the prima facie requirements beyond administrative exhaustion are identical for retaliation claims under § 1981 and Title VII). A protected activity generally consists of opposing employment discrimination or participating in a discrimination investigation, proceeding, or hearing.  42 U.S.C. § 2000e-(3)a; *see also Clover v. Total Systems Services, Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999).

[4] Smith argues that he also engaged in the protected activity of "participation."  Doc. 14 at 14-15.  However, the participation clause only "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC."  *E.E.O.C. v. Total Sys. Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).  Here, Smith failed to allege that Bennett's questions about the "KKK incident" were related to a formal EEOC charge.  Accordingly, Smith's participation in the internal investigation into this incident is not considered protected activity under § 1981 or Title VII.

"KKK incident," has clear racial undertones.  Moreover, Smith alleges that the desk reassignment incident occurred in response to his complaints about the "KKK incident."  Accordingly, Smith's allegation that he raised concerns about the incidents when prompted by a supervisor is sufficient to establish that he engaged in a statutorily protected activity.

ASRI contends next that Smith's allegation of a causal connection between his discharge and protected activity fails as a matter of law because of the three year time span between the two incidents.  ASRI points out correctly that a three year period between the protected conduct and the adverse employment action is too great a span to create a causal connection.  However, based on the court's review of the complaint, Smith does not appear to rely on temporal proximity alone to establish the causation prong.  *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[I]n the absence of *any other evidence of causation*, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation." (emphasis added)).  Rather, Smith appears to allege other causation based facts, such as Johnson's direct participation in discriminatory activities, knowledge of Smith's complaints, and direct influence on the ultimate decision makers through a performance evaluation and/or recommendation for lay off.  Specifically, Smith alleges that

ASRI discharged him based on Johnson's recommendation or evaluation and that Johnson completed this evaluation "in an effort to retaliate against [Smith]" for complaining about the "KKK incident" and desk reassignment three years prior. Doc. 18 at ¶¶ 20, 30, 38. At this juncture, the court's task is not to weigh the merits of Smith's claim; rather, the court must assume Smith's factual allegations are true and determine whether his claims are sufficiently pled. *Twombly*, 550 U.S. at 555 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.").  The additional allegations of causation Smith pled in his complaint are sufficient at this juncture for Smith to overcome the temporal proximity deficiencies of his claim and survive the motion to dismiss.  *Drago*, 453 F.3d at 1308.

## IV.   CONCLUSION

Based on the foregoing, Smith sufficiently pled his claims.  Accordingly, ASRI's motion to dismiss the complaint is **DENIED**.

**DONE** this 28th day of May, 2013.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE